UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ROBERT HISCOX, | No. 2:10-cv-0467 JAM CKD P |
| Plaintiff, | |
| v. | |
| MIKE MARTEL, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

    Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the Second Amended Complaint filed November 22, 2011 (ECF No. 22 ("SAC")), which was served on ten defendants (ECF No. 27). Before the court is defendants' January 9, 2013 motion to dismiss the SAC for failure to state a claim and failure to exhaust administrative remedies.[1] (ECF No. 41.) Plaintiff has filed an opposition to the motion (ECF No. 49), and defendants have filed a reply (ECF No. 52). For the reasons set forth below, the undersigned will recommend that defendants' motion to dismiss be granted.

I. <u>Failure to State a Claim</u>

    In its May 7, 2012 order, the court found that for screening purposes the SAC stated claims against the following four defendants for violating plaintiff's Eighth Amendment

---

[1] On March 1, 2013, defendant Haven, who was recently served, joined the other nine defendants' motion to dismiss and reply. (ECF No. 53.)

1

protection against deliberate indifference to serious medical needs: Wynne[2], Haven, Woods, and Dage. In their motion, these defendants argue that plaintiff's allegations fail to state a cognizable claim against them under Federal Rule of Civil Procedure 12(b)(6).[3]

A. Allegations

As to these defendants, plaintiff alleges as follows:

During the relevant period, plaintiff was housed at Mule Creek State Prison (MCSP). (SAC ¶ 1.) Plaintiff was prescribed generic Tylenol 3 as palliative treatment for pain management by Physician's Assistant Junior Fortune, approved by W. Hashimonto, M.D. for the period of June 15, 2009 to July 27, 2009. (Id., ¶ 29.) Clinic staff failed to dispense plaintiff his prescribed Tylenol 3 on the following dates: From June 15, 2009 to June 20, 2009, defendant Wynne failed to dispense the medication. On June 19, 2009, defendant Haven failed to dispense the medication. On June 20, 2009, defendant Woods failed to dispense the medication. On June 27, 2009, defendant Dage failed to dispense the medication. (Id., ¶ 30.) Wynne, Haven, Woods, and Dage were Licensed Vocation Nurses who failed to dispense this medication at their scheduled 20:00 hour medication dispensary. They failed to correct the problem when put on notice and repeated their failure after plaintiff demanded his medication. (Id., ¶ 33.)

B. Legal Standard

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable

---

[2] The court previously referred to this defendant as "Wynn," but adopts the spelling "Wynne" per defendants' motion.

[3] Defendants also argue that plaintiff's supplemental state claims against defendants Wynne, Woods, Haven, and Dage should be dismissed because plaintiff filed to comply with the California Tort Claims Act. See Cal. Gov't Code § 910; Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d. 1470, 1477 (9th Cir. 1995). In his opposition, plaintiff concedes that his state claims against the medical defendants should be dismissed for this reason.

1  right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp.
2  235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to
3  'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
4  (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads
5  factual content that allows the court to draw the reasonable inference that the defendant is liable
6  for the misconduct alleged." Id.

7  In considering a motion to dismiss, the court must accept as true the allegations of the
8  complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976),
9  construe the pleading in the light most favorable to the party opposing the motion, and resolve all
10 doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.
11 869 (1969). The court will "'presume that general allegations embrace those specific facts that
12 are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510
13 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).
14 Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.
15 Haines v. Kerner, 404 U.S. 519, 520 (1972).

16 The court may consider facts established by exhibits attached to the complaint. Durning
17 v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts
18 which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388
19 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed
20 with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The
21 court need not accept legal conclusions "cast in the form of factual allegations." Western Mining
22 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

23 C. Eighth Amendment Claim

24 Denial or delay of medical care for a prisoner's serious medical needs may constitute a
25 violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S.
26 97, 104-05 (1976). An individual is liable for such a violation only when the individual is
27 deliberately indifferent to a prisoner's known serious medical needs. Id.; see Jett v. Penner, 439
28 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v.

1   Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000). To establish deliberate indifference, an individual
2   defendant must have "purposefully ignore[d] or fail[ed] to respond to a prisoner's pain or possible
3   medical need." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) overruled on other
4   grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). "Mere negligence
5   in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth
6   Amendment rights." Id. at 1059. "A difference of opinion between a prisoner-patient and prison
7   medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Or.
8   State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). Furthermore, where a prisoner alleges
9   that delay of medical treatment evinces deliberate indifference, the prisoner must show that the
10  delay caused "significant harm and that Defendants should have known this to be the case."
11  Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060. Mere delay of medical treatment,
12  "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v.
13  Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).
14  D.  Discussion
15       Here, plaintiff alleges that Wynne failed to dispense his pain medication at the scheduled
16  20:00 hour from June 15, 2009 to June 20, 2009, for a total of six days' missed medication. He
17  alleges that Haven and Woods each failed to dispense the medication for one day within the six-
18  day span, and that Dage failed to dispense the medication on June 27, 2009.
19       Defendants argue that plaintiff has alleged no facts indicating that defendants knew
20  plaintiff should have been supplied with Tylenol 3, but refused to give it to him. Plaintiff does
21  allege that defendants were "put on notice" in some unspecified way and that he "demanded his
22  medication." (SAC, ¶ 33.) However, in the absence of any allegation that defendants read
23  plaintiff's medical chart, were aware of his medical condition, or were responsible for his care,
24  defendants' failure to respond to plaintiff's demands for pain medication does not rise to the level
25  of deliberate indifference. See Wood v. Housewright, 900 F.2d 1332, 1333 (to state claim for
26  deliberate indifference, plaintiff must allege "more than mere negligence or isolated occurrences
27  of neglect"); see also Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (alleged delay in
28  administering pain medication to inmate did not constitute deliberate indifference). As plaintiff's

allegations do not amount to a showing that defendants intentionally denied him medication while knowing that this would cause "significant harm," defendants' Rule 12(b)(6) motion should be granted as to these defendants. See Hallett, supra, 296 F.3d at 745-46.

II. Failure to Exhaust State Remedies

In its May 7, 2012 order, the court found that the SAC stated claims against the following six defendants for violating plaintiff's First Amendment protection against retaliation for activities. (ECF No. 27 at 2): Baker, Lamb, Hyland, Armstrong (Blackwell)[4], Olivas, and Thomason. In their motion, defendants argue that plaintiff's claims against these defendants should be dismissed for failure to exhaust state remedies under Federal Rule of Civil Procedure 12(b).[5]

A. Allegations

As to these defendants, plaintiff alleges as follows:

On October 1, 2009, the mail room at MSCP stopped providing large envelopes without providing notice to the inmate population. (SAC ¶ 45.) Plaintiff filed a CDC 602 appeal about the new envelope policy. (Id., ¶ 46.) He was interviewed by R. Garcia, Office Services Specialist, who advised him that the new policy required the inmate to trade five indigent envelopes for one large envelope, and that plaintiff should contact his Correctional Counselor to obtain such an envelope. (Id., ¶ 47.)

On November 6, 2009, plaintiff spoke to defendant Baker, his Correctional Counselor, about the envelope issue. Baker refused to provide him with a large envelope. (Id., ¶ 48.) Baker told plaintiff: "You sound proud to call yourself an indigent inmate"; "You should feel lucky that you are at Mule Creek State Prison, the best prison in the state"; and "We don't have to provide

---

[4] Defendants note that, in his filings, plaintiff refers to defendant Blackwell as defendant Armstrong. As her name is J. Blackwell, the court now refers to her by this name. (ECF No. 41-1 at 2, n.1.)

[5] Plaintiff asserts that he exhausted administrative remedies for his medical claims against defendants Wynne, Woods, Haven, and Dage. Defendants do not dispute that these claims are exhausted.

envelopes to indigent inmates." Plaintiff took these statements to be threats that he should drop his appeal, stop complaining, and be happy he was at a safe prison or else. (Id., ¶ 49.)

On January 15, 2010[6], Baker summoned plaintiff to her office and informed him that she was recommending him for a transfer to Avenal State Prison. Plaintiff requested that he not be transferred because he had a family hardship, and because of his commitment offense and sexual orientation issues, but Baker refused to discuss the subject and told plaintiff to pick a secondary prison to go to. (Id., ¶¶ 87-88.) When plaintiff claimed the transfer was in retaliation for being troublesome and litigious, Baker stated: "If I were you I wouldn't bring that up at the committee hearing because you will surely end up where you don't want to be." (Id., ¶ 89.)

On January 22, 2010, plaintiff attended a classification committee hearing before defendants Olivas, Lamb, Baker, Blackwell, and Hyland. (Id., ¶ 90.) Plaintiff complained that Baker had failed to address administrative factors affecting his placement at MCSP and was retaliating against him for filing a 602 appeal and staff complaint. (Id., ¶ 91.)

Defendant Hyland told plaintiff that the committee did not have time to address his complaints and he should file an appeal. Defendant Lamb told plaintiff: "If you want to continue to complain during this hearing I'll make sure you are on the next bus out of here." (Id., ¶ 92.)

In order to secure plaintiff's transfer, Baker prepared a CDCR Reclassification Score Sheet that did not list certain administrative placement factors bearing on plaintiff's transfer. (Id., ¶¶ 93-94.) The classification committee reviewed the sheet and endorsed plaintiff to be transferred to Avenal State Prison based on the administrative factors listed by Baker, some of which were inaccurate. (Id., ¶ 96.)

On January 28, 2010, plaintiff filed a 602 appeal claiming that his transfer was retaliatory for plaintiff's grievance and staff complaints. Plaintiff also requested to be placed in B-Gym Level Two Housing at MCSP. (Id., ¶ 97.)

On March 3, 2010, plaintiff was interviewed by defendant Thomason, Appeals Coordinator, at the second formal level. (Id., ¶ 98.) Plaintiff alleges that Thomason made false

---

[6] The date of January 15, 2009 in the SAC appears to be a typographical error.

6

statements of fact to cover up Baker's retaliation, false statements regarding the availability of housing, and false statements concerning the status of his appeals. (Id., ¶¶ 100-104.)

B. Administrative Appeals

Plaintiff commenced the instant action on February 24, 2010. (ECF No. 1.) In their motion to dismiss, defendants argue that, while plaintiff filed several 602 appeals relating to the subject matter of this lawsuit, he prematurely commenced this action before the review process had been completed for any of these appeals. Thus, they contend, his claims against the above defendants should be dismissed for failure to exhaust administrative remedies prior to filing suit.

The record before the court indicates that plaintiff filed the following 602 appeals about alleged conduct by defendants Baker, Blackwell, Lamb, Olivas, and Hyland[7]:

- Appeal No. MCSP-B-09-01880, concerning plaintiff's interactions with Baker over the envelope policy, including Baker's allegedly threatening statements on November 6, 2009. (Elorza Dec. ¶ 14, Ex. L.) This appeal was exhausted at the Director's Level on June 10, 2011. (Lozano Decl. ¶ 5, Ex. D.)

- Appeal No. MSCP-B-10-00602, complaining that plaintiff's legal mail to the Warden was returned to him as part of a plot by Baker and Blackwell in retaliation for his filing of 602 appeals. (Elorza Decl. ¶ 14, Ex. P.) This appeal was exhausted at the Director's Level on October 29, 2010. (Lozano Decl. ¶ 5, Ex. C.)

- Appeal No. MCSP-C-10-00181, concerning the allegedly retaliatory decision to transfer plaintiff at the January 22, 2010 classification committee hearing. (Elorza Decl. ¶ 14, Ex. N.) This appeal was exhausted at the Director's Level on June 16, 2010. (Lozano Decl. ¶ 5, Ex. E.)

Plaintiff did not file a 602 grievance concerning the alleged misconduct by defendant Thomason on March 3, 2010.

/////

/////

---

[7] The court omits those appeals concerning the prison's envelope policy.

7

C. Legal Standard

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. Defendants bear the burden of proving plaintiff's failure to exhaust. Id. at 1119.

Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (also known as the Prison Litigation Reform Act ("PLRA")). The PLRA requires that administrative remedies be exhausted prior to filing suit. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford v. Ngo, 548 U.S. 81 (2006). California state regulations provide administrative procedures in the form of one informal and three formal levels of review within the California Department of Corrections and Rehabilitation (the "CDCR") to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5.

"The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Jones v. Bock, 549 U.S. 199, 218 (2007). In California, prisoners are required to lodge their administrative complaint on a CDC Form 602, which requires only that the prisoner "describe the problem and action requested." Cal. Code Regs. tit. 15, § 3084.2(a). Thus in California, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin v. Arpaio, 557 F.3d

8

1117, 1120; accord, Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims). Thus, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

D. Discussion

In his original complaint filed February 24, 2010, plaintiff named Baker, Blackwell, Lamb, Hyland, and Olivas as defendants, among others. (ECF No. 1.) The allegations against these defendants concerned the same issues (i.e., the envelope policy and transfer decision in 2009 and 2010) as in the later-filed First Amendment Complaint (FAC) and SAC. The previously-assigned magistrate judge dismissed the complaint with leave to amend on June 7, 2010. (ECF No. 9.)

On October 14, 2010, plaintiff filed the FAC, which named Baker, Blackwell, Lamb, Hyland, and Thomason as defendants. (ECF No. 17.) The undersigned found the FAC to state a First Amendment retaliation claim as to each of these defendants. (ECF No. 21 at 10.) However, plaintiff was again granted leave to amend to cure the defects of the FAC as to other defendants. (Id. at 11.)

On November 22, 2011, plaintiff filed the SAC (ECF No. 22), which was found to state a First Amendment claim against Baker, Blackwell, Lamb, Hyland, Olivas, and Thomason, based on substantially the same allegations as in the FAC and original complaint. (ECF No. 27.)

Because plaintiff brought suit against defendants Baker, Blackwell, Lamb, Hyland, and Olivas on February 24, 2010, he was required to have completed the inmate appeals process as to his claims against these defendants by that date. See Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (under 42 U.S.C. § 1997e(a), a prisoner "may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed."); see also Akhtar v. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation.")

9

As set forth above, the administrative review of plaintiff's 602 appeals concerning these defendants' alleged actions was not complete until months later. Thus plaintiff did not properly exhaust these claims before filing suit. See Vaden, 449 F.3d at 1050 ("The complaint is 'brought' by the prisoner when he submits it to the court. Accordingly, the prisoner must have entirely exhausted administrative remedies by this point.")

As plaintiff did not file a 602 appeal concerning the alleged conduct of defendant Thomason, this claim is unexhausted as well.

In opposition to defendants' motion, plaintiff argues that prison officials interfered with his attempt to use the grievance system, making the appeals process effectively unavailable to him. This argument is belied by the numerous 602 appeals plaintiff filed during the 2009-2010 timeframe (see ECF No. 49 at 22-23), including those appeals described above, which were ultimately denied at the third and final level of review.

Because plaintiff failed to exhaust administrative remedies before filing suit against defendants Baker, Blackwell, Lamb, Hyland, Olivas, and Thomason, defendants' motion to dismiss should be granted as to these defendants.[8]

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' January 9, 2013 motion to dismiss (ECF No. 41) be granted; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

/////

/////

---

[8] In light of this finding, the court does not reach defendants' argument that plaintiff fails to state a claim against Thomason.

1  advised that failure to file objections within the specified time may waive the right to appeal the
2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  Dated:  May 15, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
hisc0467.mtd